IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EMMANUEL JE'ROME WEBB,                )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        NO. 3:25-cv-00335
                                      )
LIEUTENANT TIMOTHY DIAL, et al.,      )        JUDGE RICHARDSON
                                      )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Emmanuel Webb, an inmate in the custody of the Davidson County Sheriff's Office (DCSO), filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) Plaintiff subsequently filed motions for a jury trial (Doc. No. 5) and to ascertain the status of this case. (Doc. No. 6.)

This case is before the Court for ruling on Plaintiff's IFP application and motions, and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, the IFP application (Doc. No. 2) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350

instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

## B. Factual Allegations

The Complaint claims that Plaintiff's First and Fourth Amendment rights were violated when DCSO "personnel pulled [him] from [his] cell, took all [his] paper including legal documents, and eventually destroyed them for no reason." (Doc. No. 1 at 3; Doc. No. 1-1 at 2.) Plaintiff alleges that his papers—which included discovery motions and hearing transcripts (Doc.

No. 1-1 at 4)—were confiscated to test them for "illicit substances," and that even though no such substances were detected, his papers were destroyed. (*Id.* at 1.) He alleges that on the day of the confiscation, July 9, 2024, other "legal documents from [DCSO] were tested for narcotics." (*Id.* at 5.) "Some legal documents passed and some failed," but the ones that failed this test for narcotics belonged to another inmate named Perry. (*Id.*) Inmate Perry told Plaintiff that Defendant Chief Administrator Timothy Dial and an "unknown subject" visited his cell and "tried to coerce him into blaming [Plaintiff] for the legal documents being soaked in narcotics." (*Id.*) When this was unsuccessful, Defendants "maliciously and revengefully released false stories about [Plaintiff] to the media," to villainize him, make him "look guilty for crimes [he] didn't com[m]it," and discredit him in his community. (*Id.*) When the media piece aired, Defendant Chief Thomas Conrad purposefully restricted all inmates in Plaintiff's housing unit from watching television or making calls, so that Plaintiff would not see or hear about the broadcast. (*Id.*) Plaintiff asks for damages to be awarded against the DCSO, Chief Administrator Dial, and Chief Conrad, and for Dial and Conrad to be terminated from DCSO employment. (*Id.* at 6.)

**C. Analysis**

As an initial matter, the DCSO—"understood as either a place of incarceration or a law enforcement agency"— is not a proper defendant under Section 1983. *Richardson v. Robertson*, No. 3:22-cv-00716, 2022 WL 17070542, at *3 (M.D. Tenn. Nov. 17, 2022) (citing cases); *see also Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 860 (6th Cir. 2019) (affirming judgment in favor of sheriff's office "because plaintiff failed to name a suable party" under § 1983). "So, even if the Complaint stated a claim for relief, Plaintiff could not maintain this case against Defendant DCSO." *Richardson*, 2022 WL 17070542, at *3.

Plaintiff asserts two claims, based respectively on (1) the confiscation and subsequent destruction of his legal papers after those papers tested negative for illicit substances, and (2) the malicious provision of "false stories to Nashville local news station(s) to make [Plaintiff] look like a criminal to [his] community." (Doc. No. 1-1 at 2.) Plaintiff cites the First and Fourth Amendments to the U.S. Constitution in response to the form Complaint's prompt to provide the source of his claims (Doc. No. 1 at 3), but he does not further elucidate which of the variety of kinds of First or Fourth Amendment claims he is pursuing.

Whether it is the search of his cell or the seizure and destruction of his papers that Plaintiff challenges under the Fourth Amendment, *see* U.S. CONST. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."), he fails to state a plausible claim to relief. The Fourth Amendment's protections do not apply to an inmate's cell or the seizure of property from it, including legal papers that are seized and destroyed. *Hudson v. Palmer*, 468 U.S. 517, 528–36 & n.8 (1984) (holding that neither a random cell search nor the seizure and destruction of items discovered in that search—including legal papers—runs afoul of Fourth Amendment proscriptions, which are "inapplicable in a prison cell," as "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests")).

Nevertheless, the lack of Fourth Amendment protection "does not mean that an inmate's property can be destroyed with impunity." *Id.* The Due Process Clause of the Fourteenth Amendment protects against the unlawful deprivation of a person's property by public officers. However, in cases where "a meaningful postdeprivation remedy" is provided by state law, the intentional loss or destruction of personal property does not violate the federal right to procedural

due process. *Id.* at 533. Thus, for Plaintiff to state a constitutional claim for the destruction of his legal papers, he must plead and prove that he has no adequate state postdeprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995). In another case against individual employees of a county sheriff's office, the Sixth Circuit concluded that a state-law cause of action for conversion would "generally satisfy the postdeprivation process requirement of the Due Process Clauses." *Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534–36). In the instant case, Plaintiff does not allege that his remedies under Tennessee law are inadequate, and the Sixth Circuit has previously recognized the existence and adequacy of such remedies. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985) (finding that "the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted" or to recover damages for their loss). Therefore, the Complaint (even where construed liberally) cannot properly be deemed to state any plausible due process claim.

Plaintiff's First Amendment claim is likewise asserted ambiguously. The allegations of the Complaint do not suggest that his papers were confiscated and destroyed in retaliation for any prior protected conduct or threat of future protected conduct, as required to state a claim of First Amendment retaliation. *See Matthews v. Bleil*, No. 2:21-CV-13017, 2024 WL 3976896, at *3 (E.D. Mich. July 19, 2024), *report and recommendation adopted*, 2024 WL 3974675 (E.D. Mich. Aug. 28, 2024) (discussing protected-conduct requirement of First Amendment retaliation claim, which may be satisfied by threats to file non-frivolous grievances). Nor do those allegations support the inference that the destruction of his legal documents caused an "actual injury" to a nonfrivolous legal claim that involves an attack on his incarceration or challenge to the conditions of his confinement, as required to state a plausible First Amendment access-to-courts claim. *Lewis v. Casey*, 518 U.S. 343, 349–55 (1996).

The Complaint's remaining allegations—related to the publication of a damaging local news piece based on Defendants' provision of false information to the media about Plaintiff, and Chief Conrad's removal of television and phone privileges on the day the piece aired—do not support any claim that Plaintiff's constitutional rights were violated, under the First Amendment or otherwise. *See Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991) (discussing *Paul v. Davis*, 424 U.S. 693 (1976), and finding that "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation," even when it is a governmental actor who communicates the damaging information; a plaintiff attempting to show "damage flow[ing] from injury caused by the defendant to [] plaintiff's reputation" may seek to recover "under state tort law," but not under federal constitutional law); *McGraw v. Turner*, No. 2:11-CV-370, 2011 WL 5412910, at \*4 (W.D. Mich. Nov. 8, 2011) (finding that "the temporary deprivation of his television" did not violate the plaintiff-inmate's constitutional rights) (citing *Schmitt v. Mulvey*, No. 04–10717, 2006 WL 516755, at \*3 (D. Mass. Mar. 1, 2006) (finding no constitutional deprivation in inmate's "loss of television, radio and telephone privileges for a couple of months")).

For these reasons, the Complaint in this case fails to state any plausible claim against a proper defendant under Section 1983. Dismissal is therefore required.

### III. CONCLUSION

In light of this Order's explanation of the status of this case, Plaintiff's pending motion to ascertain the same (Doc. No. 6) is deemed **GRANTED**. For the reasons discussed above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Plaintiff's motion for jury trial (Doc. No. 5) is **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment, Fed. R. Civ. P. 58(b)(1), and close the file.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE